

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 17, 1997

The Honorable José R. Rodríguez
El Paso County Attorney
County Courthouse
500 E. San Antonio, Room 203
El Paso, Texas 79901

Opinion No. DM-460

Re: Authority of the El Paso County Juvenile Probation Board to enter into contracts or authorize expenditures without the commissioners court's approval (RQ-939)

Dear Mr. Rodríguez:

You ask several questions relating to the authority of the El Paso County Juvenile Probation Board (the "board") to enter into contracts or authorize expenditures for the El Paso Juvenile Department (the "department") without approval of the Commissioners Court (the "commissioners court") of El Paso County (the "county"). A juvenile board is generally responsible for providing juvenile probation services[1] in one or more counties and employing juvenile probation officers and personnel to provide these services.[2] The composition and powers of any particular juvenile board are determined by the general statute providing for juvenile boards in all counties and by any special statute applicable to that county.[3] Juvenile probation departments are established and operated under the auspices of the juvenile board in conjunction with the rules and regulations adopted by the Texas Juvenile Probation Commission (the "commission").[4]

Before turning to your specific questions, we look at the statutes pursuant to which the board and the department were created and operate. The board was created by section 152.0771 of the Human Resources Code,[5] and is composed of the county judge, each family district court judge, each

---

[1] Juvenile probation services are "services provided by or under the direction of a juvenile probation officer in response to an order issued by a juvenile court and under the court's direction[,]" or services provided by a juvenile probation department in relation to the operation of a juvenile detention facility. Hum. Res. Code § 142.001.

[2] *See* Hum. Res. Code § 152.0007; 36 DAVID B. BROOKS, COUNTY AND SPECIAL DISTRICT LAW § 24.3 (Texas Practice 1989).

[3] 36 DAVID B. BROOKS, COUNTY AND SPECIAL DISTRICT LAW § 24.3 (Texas Practice 1989).

[4] *Id.* § 24.4.

[5] Other statutes applicable to the board include the general provisions in subchapter A of chapter 152. *See* Hum. Res. Code §§ 152.0001, .0031 (stating application of subchapter A and B of chapter 152), .0051 - .0055 (subchapter
(continued...)

juvenile court judge, and up to five judges on the El Paso Council of Judges[6] elected by a majority vote of the council. The board is charged with providing juvenile probation services in the county in response to orders issued by and under the direction of the juvenile court. Hum. Res. Code §§ 142.001, 152.0007(a). Commission rules and regulations govern the board's minimum standards for personnel, staffing, programs, record keeping, and other aspects of the board's operations necessary to provide juvenile probation services. *Id.* §§ 141.042, 152.0007.

The board hires department personnel, including the chief probation officer and any assistants. *Id.* §§ 142.002, 152.0007(a). The board sets department employee salaries. *Id.* 142.002(b); Attorney General Opinion MW-587 (1982) (construing predecessor to section 142.002(b) to allow juvenile board to set salaries subject to commissioners court's review only for abuse of discretion). The commissioners court is required to pay the salaries of juvenile probation personnel and other expenses certified as necessary by the juvenile board chairman. Hum. Res. Code § 152.0004; Attorney General Opinion MW-587 (1982); *but see* Act of June 1, 1997, 75th Leg., R.S., ch. 1197, § 9, 1997 Tex. Sess. Law Serv. 4611, 4613 (codified at Local Gov't Code § 111.094). Juvenile probation personnel are considered state employees and not county employees for the purposes of governmental liability under chapter 104 of the Civil Practice and Remedies Code. Hum. Res. Code § 142.004(b).[7]

The department is funded with both county and state funds.[8] *Id.* §§ 141.081, .084, 152.0004, .0005, .0012; *see* Local Gov't Code § 111.094. Although the board is required to submit the department's budget to the commissioners court,[9] the latter's authority over the budget is limited. Hum. Res. Code §§ 142.002, 152.0007, .0012;[10] Local Gov't Code § 111.094. A commissioners

---

[5](...continued)
C, limited to counties with family district court), .0071 - .2571 (subchapter D, provisions applicable to specific counties). Additionally, chapter 142 of the Human Resources Code includes provisions generally applicable to a juvenile board and juvenile probation department as does chapter 141, dealing with the Texas Juvenile Probation Commission and the state-wide administration and coordination of juvenile probation services.

[6]Each juvenile board is required to appoint an advisory council composed of not more than nine citizens, including a prosecuting attorney, a mental health professional, a medical health professional, and a representative of the education community. *See* Hum. Res. Code § 152.0010(a).

[7]*But see id.* § 141.067 (juvenile probation officer whose jurisdiction covers only one county considered county employee).

[8]The Texas Juvenile Probation Commission is required to allocate annually state funds for financial assistance to juvenile boards to provide juvenile probation services. *Id.* § 141.081. The commission grants the "state aid" to juvenile boards that comply with the commission's standards for aid. *Id.* §§ 141.082, .084.

[9]*See* Local Gov't Code § 140.004; Hum Res. Code § 152.0012.

[10]*See* STATE BAR OF TEXAS, SECTION REPORT, JUVENILE LAW 9 (Special Legislative Issue 1995) (commissioners court has limited review and must approve budget unless it can show abuse of discretion, citing
(continued...)

court has no authority to consider or review the portion of the department budget funded with state funds. Hum. Res. Code § 152.0012.[11] With respect to the items funded by the county, the commissioners court's authority has been limited to approving and funding the budget unless the commissioners court can show that the board has abused its discretion. *Id.*[12] But under recent legislation, the county determines the "amount of county funds to be spent for the juvenile department in the county budget." *See* Local Gov't Code § 111.094. Under this provision, however, the county may only determine the total dollar amount of county funds allocated to the department.[13]

---

[10](...continued)
Attorney General Opinion MW-587 (1982)); ROBERT O. DAWSON, TEX. JUVENILE PROBATION COMM'N, AN ANALYSIS OF JUVENILE STATUTORY AND CASE LAW FOR TEXAS JUVENILE JUSTICE OFFICIALS (Texas Juvenile Law 4th ed. 1996) (juvenile board establishes budget and commissioners may review for abuse of discretion); *see also* Attorney General Opinion MW-587 (1982) (commissioners court must budget and approve salaries set by juvenile board); *infra* note 11.

[11]Section 152.0012 of the Human Resources Code enacted in 1995, provides the following:

> The juvenile board shall prepare a budget for the juvenile probation department and the other facilities and programs under the jurisdiction of the juvenile board. The commissioners court shall review and consider only the amount of county funds derived from county taxes, fees, and other county sources in the budget. The commissioners court may not review any part of the budget derived from state funds.

By the terms of the statute, commissioners court's review is restricted to the part of the budget derived from county funds. With respect to that part, Representative Goodman, author of the legislation, has stated that the purpose was to allow the commissioners court to review the budget in order to adequately prepare for the level of county funding that will be necessary; it was not to give veto power over the budget. Debate on H.B. 327 on the Floor of the House, 74th Leg., R.S. (May 25, 1995) (transcript available from House Video/Audio Services Office).

[12]*See supra* notes 10, 11.

[13]*See* Act of June 1, 1997, 75th Leg., R.S., ch. 1197, § 9, 1997 Tex. Sess. Law Serv. 4611, 4613 (codified at Local Gov't Code § 111.094). Senator Jon Lindsay, who proposed the conference committee language of section 111.094 adopted by the house and senate, explained the legislation as follows:

> [N]othing in this bill points out . . . how those courts [juvenile courts] or how the juvenile board is to operate. Nothing . . . . It's only a dollar amount that goes to them. Everything else—everything else is set—everything else is set by the juvenile board.
>
> . . . .
>
> Well, they [the juvenile boards] still have authority to do—to set the line items within their budget all the way. We have—and that's local money, state money, and any federal grants they might get.

Debate on S.B. 1395 on the Floor of the Senate, 75th Leg. (June 1, 1997) (tape available from Senate Staff Services).

It may not determine the particular purposes or amounts of any expenditures from these or any other funds the department receives.[14]

The department is a "specialized local entity" under section 140.003 of the Local Government Code, that is required to deposit funds it receives in the county treasury, Local Gov't Code § 140.003(a), (f), and is also subject to the purchasing requirements applicable to the county under subchapter C of chapter 262 of the Local Government Code, id. § 140.003(b).

Finally, the board is expressly authorized to contract with the Texas Youth Commission for juvenile probation services, Hum. Res. Code § 142.003(b), and to provide services to persons who violate parole, id. §§ 141.0432(d), (e), 142.003(b). The board or the department is additionally authorized to contract with a private vendor for the financing, construction, operation, maintenance, or management of a youth boot camp, and may also contract with other local juvenile boards and departments to establish joint regional boot camps. Id. § 152.0011.

We start by addressing your third question since it requires us to examine the relevant statutory framework in its entirety. You ask if "the County is generally liable for contracts entered into by the Juvenile Probation Department or is such liability limited to the funds received by the juvenile probation department as a specialized local entity?" You do not indicate in your letter the particular type or subject of the contract at issue. Therefore, our answer to your question must necessarily be general in scope.

No provision conclusively indicates whether the department is a separate and autonomous entity or a part of the county. Consequently, we examine the characteristics of the department to make this determination. As stated by the Texas Supreme Court, "[c]ommon sense dictates that important considerations in determining the nature [of an entity], include, among other things, sources of funding, accountability and supervision." *Lohec v. Galveston County Comm'rs Court*, 841 S.W.2d 361, 363 (Tex. 1992).

The department at issue is established by the board. *See* Hum. Res. Code § 152.0007(a). The purpose of the department, the provision of juvenile probation services, is not merely a county concern, but a state-wide one,[15] provided in response to and under the direction of juvenile court orders and governed by state regulations. *See id.* §§ 142.001, 141.042, 152.0007. The commissioners court has no authority with respect to the creation and composition of the board since the board is a statutorily created entity comprised of the members designated by the statute. *See id.* § 152.0771. The board hires department personnel and sets their salaries, without commissioners court supervision. *Id.* §§ 142.002(b), 152.0007(a). Department employees are considered state

---

[14]*Id.*

[15]*See* Act of May 30, 1981, 67th Leg., R.S., ch. 617, § 1, 1981 Tex. Gen. Laws 2419, 2419 (amending predecessor to chapter 141 of the Human Resources Code to make probation services available throughout the state for juveniles).

employees[16] for the purposes of state liability and indemnification for acts of negligence and criminal prosecution. *Id.* § 142.002(b). Although the department's budget comprises county funds as well as state funds, the commissioners court has limited control over even the county funded portion. *Id.* §§ 142.002(b), 152.0004, 152.0012; *see also supra* note 13. The board or the department is specifically empowered, without any express provision for county oversight, to enter into certain contracts. *Id.* §§ 141.0432(d), (e), 142.003(b), 152.0011. All of these factors indicate that the department is an entity independent of the county. We note that the department is made subject to some county supervision in the deposit and disbursement of department funds. *See* Local Gov't Code § 140.003. We do not believe this requirement indicates that the department is part of the county but, in fact, indicates that the department is distinct from the county. If the department was merely a part of the county, there would be no need to require the deposit of department funds in the county treasury and disbursement by the county. Similarly, the fact that the department is made subject to the county purchasing requirements also supports the distinction between the county and the department. Therefore, it is our view that the department is an entity separate and distinct from the county.[17] Thus, any contract entered into by the department would be binding only on the department. Accordingly, a contract entered into by the department would not, as a general matter, impose any liability on the county.[18] We cannot and do not address whether the circumstances involved in a particular contract entered into by the department may justify the imposition of liability on the county.

We turn now to your first question. You ask if "the El Paso Juvenile Probation Department, acting through the El Paso Juvenile Probation Board, may validly enter into contracts independent of [the] Commissioners Court['s] approval?" Again, you do not indicate in your letter the particular type or circumstances of the contract at issue. Therefore, our answer to your question must necessarily be general in scope.

---

[16]*But see supra* note 7.

[17]*Compare Lohec* holding that the Galveston County Beach Park Board, in its "county creation, composition, and concern solely with [county] problems" had numerous characteristics of a county entity and was therefore subject to certain statutes governing counties. *Lohec*, 841 S.W.2d at 365. The court reached this conclusion based on a number of statutory factors: the beach park board was created at the initiation of the commissioners court for the purposes of maintaining and operating county parks; members of the county beach park board, including one member of the commissioners court, are appointed by the commissioners court and any vacancy is filled by the commissioners court; members are required to file a bond with the county clerk payable to the county and approved by the commissioners court; a county beach park board can use the services of the county attorney; county beach board funds are deposited and secured in the same manner as county funds; a county beach park board may contract with the county to keep and maintain its records; and, records of the county beach park board are subject to the inspection of the commissioners court. *Id.* at 363-65. Additionally, the county beach park board of trustee's budget was funded largely by the county and the county commissioners court approved the board's annual budget, hiring and promotions. *Id.*

[18]Your question suggests that county liability may result from merely the use of county funds for the payment of a contract or approval of the contract by the commissioners court. We find no basis for imposition of such liability.

As noted in our discussion above, no provision expressly subjects board or department contracts to commissioners court's approval. There are, on the other hand, as you point out, express provisions authorizing the board or the department to contract for particular purposes that do not reference commissioners court's approval.[19] It is our view that if the legislature had intended that the commissioners court's approval be obtained in other circumstances, the legislature would have so provided. Furthermore, we see no basis for implying such an approval requirement since, in our view, the department is not a part of the county.[20] We conclude that as a general rule and in the absence of a statute to the contrary, the board may enter into contracts[21] without commissioners court's approval. We cannot and do not, of course, address whether the subject or circumstances of a particular contract may require that the commissioners court's approval be obtained.

You next question if "the El Paso Juvenile Probation Department, acting through the El Paso Juvenile Probation Board, may validly enter into contracts with school districts to provide juvenile justice alternative education programs as required by Texas. Educ. Code Ann. § 37.0[11][22] (Vernon Supp. 1996), independent of [the] Commissioners Court['s] approval?"

A juvenile board in a county with population in excess of 125,000 is required to develop a juvenile justice alternative program (JJAEP),[23] *see* Educ. Code §§ 37.011 - .013, and to provide educational services to certain students,[24] *see id.* § 37.011(b). In accordance with this mandate, a juvenile board may provide the JJAEP in facilities owned by the school district and "[a] school district may provide personnel and services for a juvenile justice alternative education program under a contract with the juvenile *board.*" *Id.* § 37.011(e) (emphasis added). Neither section 37.011(e) nor another provision requires that the commissioners court approve a contract under this section. You inform us that the population of the county exceeds 125,000. Thus, the board is required to

---

[19]*See* Hum. Res. Code §§ 141.0432(d), (e), 142.003(b) (contracts with Texas Youth Commission for juvenile probation services); *id.* § 152.0011 (contracts with private vendor for the financing, construction, operation, maintenance, or management of youth boot camp and with other juvenile boards or departments to jointly establish regional boot camps).

[20]If the department were a part of the county, the commissioners court would, of course, have to approve and execute department contracts. *See Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941); 35 DAVID B. BROOKS, COUNTY AND SPECIAL DISTRICT LAW § 5.13 (Texas Practice 1989) (county commissioners court only body authorized to execute contracts binding on county unless statute specifically provides otherwise).

[21]We do not consider whether the board may enter into contracts other than those expressly authorized.

[22]Your request letter refers to section 37.001. We assume, however, that you intended to reference section 37.011 of the Education Code since (i) your letter brief discusses that section and (ii) section 37.001 requires each school district, and "jointly as appropriate," with the juvenile board of each county in which the school district is located, to adopt a "student code of conduct."

[23]*See generally* Attorney General Opinion DM-412 (1996).

[24]*See id.* (concluding that a juvenile board is authorized to provide educational services to students not required to attend juvenile justice alternative education programs by juvenile court order).

develop a JJAEP program and may enter into contracts with a school district under section 37.011(e) of the Education Code. We note, however, that it is the board, not the department, that is authorized to enter into a contract with a school district under section 37.011. Accordingly we conclude that the board may enter into contracts with school districts as permitted by section 37.011 of the Education Code without the approval of the commissioners court.

You ask in your fourth question whether "the El Paso Juvenile Probation Department, acting through the El Paso Juvenile Probation Board, may validly authorize the County Auditor to expend state or county funds independent of review and approval by the Commissioners Court?" You provide the following background information with respect to this question: The department is responsible for juveniles' post-adjudication placement and associated travel costs as ordered by the juvenile court. The department pays for the placement and travel costs from a variety of funds, including state and county funds. Timely transportation of a juvenile from the detention facility to a Texas Youth Commission facility is desirable for various reasons.[25] Under "normal" procedures, a request for payment for the transportation costs would be submitted to the county auditor who in turn would place the request as an item on the commissioners court's agenda for approval pursuant to Local Government Code section 115.021. This is problematic because there is a delay of one or two weeks from the date of the juvenile court placement order to the date the request for payment can be considered by the commissioners court.

You state in your letter that it has been suggested that commissioners court's approval is not required because the board as a "specialized local entity" under section 140.003 of the Local Government Code is authorized to direct payment from either the state or county funded portion of its budget, and the auditor may issue such payments without additional approval by the commissioners court.[26] We agree.

Section 140.003 provides in part:

(a) In this section, "specialized local entity" means:

(1) a district or criminal district attorney;

(2) a juvenile board, juvenile probation office, or juvenile department established for one or more counties; or

---

[25]You state that timely transportation frees up needed bed space at the detention facility and relieves the county of the expense of maintaining a juvenile at the detention facility. Additionally, you indicate, that it ensures a slot will be available at the placement facility.

[26]You also inform us that all funds received by the board are deposited in the county treasury pursuant to Local Government Code section 140.003(f) and, that with the exception of the state aid, all contracts and expenditures from the department's budget are submitted to the commissioners court for approval prior to their payment. The state aid is expended at "the direction of the juvenile probation department" without approval of the commissioners court.

> (3) an adult probation office or department established for a judicial district.
>
> (b) A specialized local entity shall purchase items in accordance with the same procedures and subject to the same requirements applicable to a county under Subchapter C, Chapter 262. For the purposes of this section, a specialized local entity is treated as if it were a county. A specialized local entity may make a contract with a county under which the county performs purchasing functions for the entity.
>
> . . . .
>
> (f) Each specialized local entity shall deposit in the county treasury of the county in which the entity has jurisdiction the funds the entity receives. *The county shall hold, deposit, disburse, invest, and otherwise care for the funds on behalf of the specialized local entity as the entity directs.*
>
> (g) The county auditor, if any, of the county that manages a specialized local entity's funds has the same authority to audit the funds of the entity that the auditor has with regard to county funds.

Local Gov't Code § 140.003 (footnote deleted) (emphasis added). Under section 140.003, a juvenile board or department, as a specialized local entity, must deposit funds it receives in the county treasury, which means depositing with the county treasurer or other county officer[27] for placement in the county depository. Attorney General Opinion DM-257 (1993) at 4. But subsection (f) also states that the "county shall . . . disburse . . the funds. . . as the entity directs." If the statutory language is clear and unambiguous, we must give the statute its common every-day meaning. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 80 (Tex. 1997). The statute's ordinary meaning allows the juvenile board or department to direct expenditure of the funds at issue.

We next look at who must act to disburse the deposited funds in response to the juvenile board's or department's direction. Subsection (f) states that the *county* shall disburse the funds. The term "county" as used in this context can reasonably refer only to the county treasurer or other county officer in charge of disbursing county funds. *See* Local Gov't Code §§ 113.001 - .003, .041 (designating county treasurer chief custodian of and requiring such officer to disburse all county funds); *Agan*, 940 S.W.2d at 80, 82 (legislature has given county treasurer exclusive power to disburse county funds). Accordingly, the juvenile board or department may direct the county treasurer or an appropriate county officer to disburse its funds.

---

[27]*See* Tex. Const. art. XVI, § 44(b), (c) and (d) (abolishing office of county treasurer in certain counties subject to voter approval and providing for transfer of duties to other county officer or persons).

No provision in Local Government Code section 140.003 expressly requires the commissioners court to review or approve expenditure of the juvenile board or department funds on deposit in the county treasury. Nor is there any basis for implying such a requirement. The legislative history of section 140.003 indicates that the legislature intended local entities, including the juvenile board or department, to be accountable for their funds in the same manner as county commissioners courts are for county funds.[28] Accordingly, a juvenile board or department under the statute must comply with the competitive bidding procedures and other requirements of subchapter C of chapter 262 of the Local Government Code applicable to a county, *see* Local Gov't Code § 140.003(b); and must deposit its funds in the county treasury, *id.* §140.003(f). Lastly, the board or department funds are subject to audit by the county auditor to the same extent county funds are, *id.* § 140.003(g). Consequently, such local entities were placed in the same position as, not made accountable to, the commissioners court for expenditure of funds.

We next examine section 115.021 of the Local Government Code to determine if the commissioners court must approve juvenile board or department expenditures. This section provides as follows: "The commissioners court of a county shall audit and settle all accounts against the county and shall direct the payment of those accounts." By its terms, this section does not apply to the board's payment requests since they do not relate to "accounts against the county." You suggest, however, that section 115.021 is nevertheless applicable to juvenile board or department expenditures by incorporation in section 140.003(f). Based on our discussion of subsection (f) above, we find no support for such an interpretation in either the language or legislative history of the statute.[29]

---

[28]The senate sponsor of the bill enacting section 140.003 explained the legislative intent as follows:

> [T]he bill provides some tightening of the accounting and handling of certain specialized funds that exist in our counties. The district attorney's fund, the juvenile board, probation department—these people all have fee incomes that go into funds, and they are not required under existing law to comply with the competitive-bidding statutes, to comply with the same kind of accountability that is applied to the county treasury and the county commissioners. *And this simply places some accounting and purchasing responsibilities to get a little bit of accountability into those public funds.*

Attorney General Opinion DM-247 (1993) (citing Hearings on C.S.H.B. 1434 Before the Senate Intergovernmental Relations Comm., 71st Leg. (May 25, 1989)) (emphasis added) (statement of Senator Parmer) (transcript available from Senate Staff Services Office).

[29]Nor do we believe that such an interpretation is supported by Attorney General Opinions DM-247 and DM-257. Both of these opinions dealt with county accounting procedure applicable to disbursement of funds deposited in the county treasury. Neither considered whether any disbursements required county commissioners court's review or approval of disbursements. In Attorney General Opinion DM-247, this office determined that section 59.06 of the Code of Criminal Procedure granted spending authority and discretion to law enforcement agencies over forfeited funds deposited in the county treasury. Thus, such agencies were not subject to the conflicting requirements that disbursements be made by the county treasurer, that all checks and warrants be countersigned by the county auditor, that all payments be approved by the county auditor, and that the "county. . . . disburse. . . .the funds on behalf of the

(continued...)

We also believe a requirement that the commissioners court review and approve juvenile board or department expenditures is contrary to the board's budgetary and financial independence. As stated previously, section 152.0012 expressly precludes the commissioners court from any review or consideration of a board's budget derived from state funds. Furthermore, the county commissioners' authority even over the portion of the board's budget derived from county funds is limited to approving the budget unless the commissioners court can show that the board has abused its discretion and to determining the total dollar amount allocated to the department. *See supra* discussion at 4-5. We have also seen that the board does not require commissioners court's approval to execute contracts and, thereby, incur liabilities. *See supra* discussion at 9-10. If a board's budget and its ability to incur liability is not subject to commissioners court's review and approval, it would be inconsistent to require disbursements to pay the board's claims to such review and approval.

Based on the foregoing, we conclude that the board, on behalf of the department, may authorize the county auditor[30] to expend state or county funds independent of the commissioners court's review and approval.[31]

---

[29](...continued) specialized local entity[,]" under Local Government Code section 140.003(f). Attorney General Opinion DM-247 (1993) at 5-6. However the auditor's record-keeping requirements did not conflict with article 59.06(d) and, therefore, applied to the forfeited funds. *Id.* at 7-8. In Attorney General Opinion DM-257, this office concluded that Local Government Code section 140.003(f) incorporated the county auditor's budgetary oversight of the warrant process and prohibition on payment of checks or warrants not countersigned by the county auditor. Attorney General Opinion DM-257 (1993) at 5.

[30]We assume the office of the county treasurer in El Paso County has been abolished and the commissioners court has designated the county auditor to perform the county treasurer's functions. *See* Tex. Const. art. XVI, § 44(d) (abolishing office of county treasurer in El Paso County if approved by voters and providing that commissioners court may designate another county officer to perform county treasurer functions).

[31]Given our conclusion, we do not address your fifth question "if [the] Commissioners Court['s] approval is required to authorize expenditure of state or county funds, may the Commissioners Court pre-approve payment for specifically defined claims within a set dollar limit?"

### S U M M A R Y

The El Paso County Juvenile Department is an entity separate and distinct from the County of El Paso. Thus, any contract entered into by the El Paso County Juvenile Probation Board on behalf of the department would not, as a general matter, impose any liability on the county. As a general rule and in the absence of a statute to the contrary, the board may enter into authorized contracts without the approval of the county commissioners court. The board may enter into contracts with school districts for provision of juvenile justice alternative education programs as permitted by section 37.011(e) of the Education Code without the county commissioners court's approval. The board may authorize expenditure of state aid and county funds independent of the commissioners court's review and approval.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Sheela Rai
Assistant Attorney General